IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

DONYA M. LARSON,               )
                              )
                Plaintiff,     )
                              )
v.                            )        Case No. CIV-17-288-JHP-KEW
                              )
COMMISSIONER OF SOCIAL         )
SECURITY ADMINISTRATION,       )
                              )
                Defendant.     )

## REPORT AND RECOMMENDATION

Plaintiff Donya M. Larson (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ."  42 U.S.C. §423(d)(2)(A).  Social Security regulations implement a five-step sequential process to evaluate a disability claim.  *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries:  first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied.  Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1]  Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform.  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work.  *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 43 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant has worked in the past as an advertising clerk at a newspaper and a housekeeper. Claimant alleges an inability to work beginning May 1, 2013 due to limitations resulting from cirrhosis of the liver, leg ulcers, obesity, hepatitis C, and anxiety.

## Procedural History

On January 2, 2014, Claimant protectively filed for disability

insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On December 14, 2015 and April 26, 2016, Administrative Law Judge ("ALJ") Deborah L. Rose conducted administrative hearings by video with Claimant appearing in Poteau, Oklahoma and the ALJ presiding from Tulsa, Oklahoma. On May 19, 2016, the ALJ issued an unfavorable decision. On June 7, 2017, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She determined that while Claimant suffered from severe impairments, she retained the residual functional capacity ("RFC") to perform a reduced range of light work.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to properly evaluate Claimant's credibility and claims of pain; (2) failing to include all of Claimant's limitations in the RFC; and (3) failing to analyze the effect of Claimant's obesity upon her RFC.

## Credibility Determination

In her decision, the ALJ determined Claimant suffered from the

4

severe impairments of hepatitis C with cirrhosis, obesity, a miled cognitive disorder, and generalized anxiety disorder. (Tr. 15). The ALJ concluded that Claimant retained the RFC to perform a reduced range of light work. In so doing, the ALJ determined Claimant could lift/carry/push/pull ten pounds frequently and 20 pounds occasionally; stand and/or walk for six hours in an eight hour workday; and sit for six hours total in an eight hour workday. Claimant could understand, remember, and carry out simple instructions, make simple work-related decisions, interact superficially for work purposes with co-workers and supervisors, but could have no public interaction required to complete job duties, and could not work in a fast production rate paced job. (Tr. 17).

After consulting with a vocational expert, the ALJ concluded Claimant could perform the representative jobs of bottling line attendant and document preparer, both of which were found to exist in sufficient numbers both regionally and nationally. (Tr. 22). As a result, the ALJ found Claimant was not under a disability from May 1, 2013 through the date of the decision. Id.

Claimant contends the ALJ failed to properly evaluate her credibility as to her pain. Claimant testified that she last worked doing light house cleaning where the heaviest she lifted was about ten pounds. She stopped working because "[i]t just got to be too much." She started getting too tired and having muscle spasms in

5

the area of her liver more frequently than she had before. (Tr. 34). Claimant stated that she suffered from cirrhosis of the liver and, recently , venous stasis ulcers in her leg. She went to the emergency room and received a salve and antibiotics. It has not healed completely because she was advised to keep her leg elevated to keep the swelling down and allow the ulcers to heal. (Tr. 35-36).

Claimant testified that her leg swelled because she was retaining fluids caused by the cirrhosis. The condition made it difficult to walk and had been occurring for a few years. She took over-the-counter Lasix. (Tr. 36).

Claimant also continued to have muscle spasms which required her to stretch out to relieve the condition. She stated that she tires easily and if she gets hot, she "shuts down" and had to lay down to cool off or she got sick. This occurred two to three times per week - especially in the summer. She testified that no one has suggested a treatment for the cirrhosis of the liver. She had not received treatment since she did not have medical coverage. She had not applied for Medicaid because she was told she would not qualify. She had not tried any other medication for her hepatitis C condition. (Tr. 37-38).

She lived in a house with four girls who were seventeen years old and her fiancé. Claimant did light house work or laundry. She

did some gardening.  Heat and overexertion tend to make her muscle spasms worse.  (Tr. 39-40).

The only treatment Claimant had received for her conditions was over-the-counter Lasix and an antibiotic ointment for her leg ulcers.  (Tr. 40).

Claimant underwent a psychological functioning evaluation due to her anxiety.  (Tr. 40).  Claimant's anxiety affects her ability to grocery shop because the presence of a lot of people made her nervous so she shopped at night.  When her anxiety affected her, Claimant got hot and she gets out of wherever she might be.  (Tr. 41).

Claimant did not go to church or go to any other meetings with people.  She attended a basketball banquet for one of the girls. She did not attend any of the games because they were too crowded. (Tr. 42).

In her prior employment, Claimant interacted with the public occasionally but not on a daily basis.  Id.  The type of interactions she would experience involved taking payments from people and writing receipts when the secretary was at lunch.  (Tr. 43).

Claimant also stated that her memory had gotten horrible since 2005.  The problem had occurred gradually to the point that she forgot appointments for the kids.  She relied upon a calendar and

7

other people to remind her.    Id.

The ALJ found the medical evidence did not support the level of intensity, persistence, and limiting effects to which Claimant testified.  (Tr. 18).  The ALJ considered the lack of treatment which Claimant received for her condition.  After the diagnosis of cirrhosis of the liver, Claimant was attended by a gastroenterologist in May of 2005 and then did not seek treatment again until April of 2016 when she went to the emergency room for treatment of her venous stasis ulcers.  (Tr. 19).

Claimant also underwent a consultative physical examination on September 22, 2014 with Dr. Nick Lee Carroll.  Dr. Carroll found Claimant's lungs were clear to auscultation bilaterally, heart had regular rate and rhythm, abdomen was soft, non-tender to palpation with no guarding or rebound tenderness noted, ascites present but no organomegaly noted with palpation.  The exam was difficult due to body habitus and bloating.  Claimant had equal range of motion in the extremities, normal range of motion in the spine and negative straight leg raising.  Her gate was stable with normal speed and stability.  (Tr. 315-16).  The ALJ also found that Claimant's admitted activities of daily living supported a finding that she was capable of performing simple light work activity.  (Tr. 20).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not

just a conclusion in the guise of findings." <u>Kepler v. Chater</u>, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. <u>Id</u>. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

The ALJ relied upon appropriate factors in evaluating the credibility of Claimant's statements.  The lack of treatment, the objective medical testing, and the inconsistencies between the claimed restrictions and Claimant's activities all form specific

and legitimate reasons for the ALJ's questioning of Claimant's credibility.

### RFC Determination

Claimant contends the ALJ should have included lower extremity edema in the RFC and the questioning of the vocational expert. While Dr. Carroll noted 1-2+ peripheral edema present in the extremities (Tr. 316), no treating or consultative physician has placed limitations upon Claimant's ability to engage in basic work activities based upon a need to elevate her leg. (Tr. 79-80, 80-82).

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material

inconsistencies or ambiguities in the evidence in the case record were considered and resolved." <u>Id</u>. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." <u>Chapo v. Astrue</u>, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ properly included all of the medically supported conditions which were demonstrated to have an effect upon Claimant's ability to engage in basic work activity.

### Consideration of Obesity

Claimant also asserts the ALJ failed to consider the effects of her obesity upon her RFC. Claimant is 5'3" inches in height and she weighs 216 pounds and is obese. (Tr. 15, 315). An ALJ is required to consider "any additional and cumulative effects" obesity may have upon other conditions from which a claimant suffers, recognizing that obesity combined with other impairments may increase the severity of the condition. Soc. Sec. R. 02-1p; 20 C.F.R. Pt. 405, Subpt. P, App. 1 § 1.00(Q)(combined effect with musculoskeletal impairments).

At step three, "a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing." Soc. Sec. R. 02-1p. "[O]besity may increase the severity of coexisting or related impairments to the extent that

11

the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments." Id. "Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Each case is evaluated on information in the case record. Id. However, speculation upon the effect of obesity is discouraged.[2] See, Fagan v. Astrue, 2007 WL 1895596, 2 (10th Cir.).

The ALJ set forth Claimant's height and weight but did not specifically discuss the effects of her obesity upon her other impairments. The medical record does not indicate and Claimant has not directed this Court to the presence of any functional limitations which would stem from Claimant's obesity. She did not testify as to any limitations which she experiences as a result of her obesity. The diagnosis of the condition does not automatically translate into functional limitations. Therefore, "the factual record does not support [Claimant's] position that her obesity, either alone or in combination with other conditions, precludes her from performing [her past relevant] work." Rose v. Colvin, 634 F. App'x 632, 637 (10th Cir. 2015) quoting Howard v. Barnhart, 379

---

[2] "[W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments." Soc. Sec. R. 02-01p.

F.3d 945, 947 (10th Cir. 2004). The ALJ did not err in her consideration of Claimant's obesity.

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 16th day of July, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE